21-1955 C.V. Harleysville Preferred Insurance Company v. Allstate Property and Casualty 21-1955 C.V. Harleysville Preferred Insurance Company v. Allstate Property and Casualty Whenever you're ready, take your time to get settled, but if you're ready we have Mr. Kalik, is that correct? Kalik, your honor. Kalik, I'm sorry. Mr. Kalik, I understand you would like to reserve one minute for rebuttal? Yes please, your honor. Please proceed when you are ready. Looks like that may be up as high. Good morning and may it please the court. Good morning. A quick personal note, this is the first time I've been in a courtroom since September 17th of 2020, after spending at least once a week in a courtroom for probably 25 years, and so it's good to be back and at least one aspect of practicing is returning to normal. My client, Harleysville Preferred, submits that the district court decision erroneously ruled that the general liability policy that it issued applied to this underlying case and that the Allstate auto liability policy issued by the appellee did not apply. And I'll first address the Harleysville policy. The Harleysville policy is a general liability policy that contains an auto exclusion that removes coverage for liability arising out of the use of an auto. Use includes loading and unloading. There's three parts of that exclusion that I think are particularly important to this case. The first is the definition of auto. The second is the concept of use. And the third is the phrase arising out of. Let's start with the definition of auto. In the Harleysville policy, auto is defined as not just a land motor vehicle but a trailer. Both of those are considered autos under the Harleysville policy. Now, there's a whole other section of a general liability policy that defines mobile equipment. This is not mobile equipment. The trailer itself. It excludes mobile equipment in that line. It excludes mobile equipment from the exceptions. It actually provides coverage for things arising out of the uses of mobile equipment, and there's all kinds of exceptions to those exceptions. But yes, so mobile equipment on one side, autos on the other. A trailer is an auto. And so I don't think the district court appreciated this, although he mentioned it. And that gets me to the second concept, is that use includes loading and unloading, but it doesn't need to include loading and unloading. Use is use. And the undisputed facts here can only be read to determine that Mr. Kim was using the trailer at the time of this accident. How was he using it other than to unload? He had used it to bring the machine to the premises. But what he's doing at the moment seems to be unloading, if it is anything. I totally agree. It was unloading. If it's anything, though. I'm trying to figure out. You say it's use regardless of whether it's loading or unloading, and I'm having trouble understanding what the other use would be. If one could determine that the process of unloading had not yet started, then it's use, because he is using the trailer to transport this dry cleaning process. But it's already been transported. Well, now it's the – I mean, this may be just a quibble. Yeah. But you seem to be making two separate arguments, one being broader and making the loading and unloading irrelevant. And I'm trying to figure out how you would describe the use that is being made of this trailer at that moment, other than for purposes of unloading the machine. What is he doing with it? Well, he was – he had – if he had not yet started unloading it, he was still transporting it from Fort Lee, New Jersey, to Yorktown Heights. The fact that the vehicle happened to be stationary in preparation of unloading does not mean it wasn't being used. It was being used because it had this dry cleaning press stored on it, and he was about to commence with the process of unloading. I agree with you. Well, suppose – I mean, this may depend on what type of trailer and whether this is a practical thing, I don't know. But suppose this was a trailer that after – it has two axles, so it's going to stand in place after it's unhitched. He unhitches it, and then he decides he doesn't really need that machine yet, so he's just going to leave it stored in the garage sitting on the trailer. That constitutes use of the trailer within the meaning of a policy that is excluding autos? That would definitely include the use of a trailer. At that point, the trailer may not be a trailer under the definition of an auto. It may be a trailer under the definition of mobile equipment. That seems important. Why is that? Because there's a provision in the mobile equipment section that says a piece of equipment that is used solely in connection with your business that is on or near your business is a piece of mobile equipment. So a trailer – I'm sorry, can I just – I'm looking for the distinction there. Let's say he had not rented a trailer. Let's say he had a box truck from your home, and this thing had fallen out of the back of the box truck and not fallen off a trailer. Right. Why aren't they both considered – why wouldn't the test for loading and loading or user – why wouldn't it be identical? I don't quite understand, because if a trailer is defined to include an auto or an auto is inclined – defined to include a trailer, and the use of the box truck or the trailer were for all relevant purposes the same, whether you're going to park the trailer behind your warehouse for a month, or you're going to park the box truck. The box truck presumably remains an auto. Why has the trailer now turned into something that's not an auto? I didn't understand that. This particular trailer would be an auto because it had a license plate, and it had to be registered under the financial responsibility laws of New York. So this particular trailer would always be an auto. What I was trying to address was a hypothetical of a trailer without a license plate, and it's really acting as a storage facility rather than a mode of transportation. The policy contemplates that that might be a piece of mobile equipment and not a trailer. Can I ask you to shift to an overarching question? Because I understand how you're trying to parse the policy language in all these parts, and I know you haven't gotten to your third point, which is arising out of it. My question goes to the extent to which New York law allows or requires a court to look to extrinsic evidence to determine what is the scope of either the duty to defend or the duty to indemnify. And here it seemed like the complaint was this generic trip and fall, right? It was a couple of sentences. And then the bill of particulars, again, was this sort of boilerplate that included everything under the sun. Tripped, fell, unsafe, didn't really say what was going on. But the same day as the bill of particulars, there was the police report that described this. But it's not clear to me, and I think our court has said, that New York law is unclear about the extent to which an insurer is allowed to look to extrinsic evidence to make these decisions. Or you're basically stuck. If you have a complaint and it's generic, and the generic allegations of the complaint would put it under your policy, are we really allowed to say, oh, wait a minute, it's a trailer. That wasn't in any of the papers. Oh, wait a minute, this was being unloaded. That makes everything different. You know, when does New York law allow the insurer to look at all that? And that's a great question. And so I think that there's a difference between duty to defend and duty to indemnify. And from a duty to defend perspective, I think you can look at the allegations, but not just in the complaint. I think you can look at the bill of particulars, which in three sections, it's only a two-page document, in three places says that the negligence stemmed from the transportation of equipment. And so that, in our view, triggered the all-state policy. Once that bill of particulars was issued. How do you know, though, a transportation of equipment, if you just say that, how do you know it's an auto? How do you know it didn't come in on a freight train with a siding? No, I'm serious. How do you know it didn't come, that there's not a siding that pulls behind an industrial warehouse and something falls off? Because presumably there are warehouses where such things happen. So how is it that we then look to know that there's a car involved that had a trailer? Sure. That's extrinsic. Sure. That's in the bill of particulars, too. And the extrinsic evidence can be used in New York, under New York law, to trigger a duty to defend. And so we had the police. You're absolutely right. We had the police report. Allstate had its investigator interview Mr. Kim. Okay, so it can trigger all states, and I understand that. Absolutely. How does it get you out of your duty to defend? Right. Because those are two, well, I don't know, are they different inquiries? Is extrinsic evidence properly considered only to the extent that it favors the insured? So, for example, if you say it could, in your view, trigger all states' duty to defend, but can it get you out of your duty to defend? I think it can when facts are undisputed like they are here. And that I think what New York law says is if there's no reasonable probability that a claim that would come within the policy, based on the actual facts, can exist, then the insurer no longer has a duty to defend. But at the very least, all states' policy would be triggered, and this hasn't been briefed, but if for some reason we could not formally get out, there's a priority of coverage issue, and the Allstate policy would have a duty to defend. And in any event, the district court also found against you on indemnity. Correct. And indemnity is clear that that's based on the actual facts, not on the obligations. The undisputed facts that you need to rely on are simply that the accident occurred in the course of the use of the trailer in some sense. Correct. Including the unloading of the trailer. That's correct. And given that there is, we'll hear from the other side, but so far it sounds like there's not much dispute that this accident occurred while or immediately in the wake of his doing something to the trailer that was intrinsic to the process of getting the machine there and getting it into its right position to be utilized in the business. There's no dispute at all. Mr. Kim filed a certification in the underlying case at A752 that says exactly that. His statement to the Allstate investigator at A590 says exactly that. Allstate's denial letter in this case described the incident as the unloading of the press machine. In fact, it's hard to describe what happened here without using the word unloading. You guys are both arguing as if it's one of these and one of you is responsible. But there is a difference, isn't there, between the exclusion for trailers in your policy and the inclusion of trailers in their policy. Would you agree that there is some state of the universe in which we could interpret these policies in such a way that Mr. Kim has not covered at all? I think that's metaphysically possible. I don't think that would be the right interpretation, and I don't think that New York law, the Section 388, would allow that interpretation because I think it would mandate that Allstate provide coverage here and fill in to the extent there was a gap that the Allstate policy has. And why does it mandate that they fill the gap rather than that you fill the gap? Because it's the auto. They issued the auto policy that covers the use, loading, and unloading of a vehicle, which this is. And so I think arguing, pressing for an interpretation that would leave a gap in coverage, I don't think would be acceptable under Section 388. So I've talked about use. I think this was clearly a use. I think this is clearly loading and unloading, which is an additional reason why our policy does not apply. The district court said that there has to be human touching of the property for loading and unloading to apply. For Allstate's coverage in light of the handling term, right? Under our policy. Under your policy. Under our policy. And that's just an incorrect statement of New York law. You have the Zurich case out of the First Department that involved undoing the straps and the rebar fell off. You have the Farm Family case out of the Third Department that involved, very similarly, they lifted the back of a truck and the tractor fell down and hurt someone. That was loading and unloading. No physical touching. But did those policies require handling? I mean, it seems like the district court is putting a lot on that, on the meaning of that as requiring physical touch. So are the cases you're pointing to, is that language involved? That's a great question. And unfortunately, those decisions are very short. So I don't recall. But one that did, Your Honor, was the Westco case, which Your Honor handled when on the district court. She handled it. So to speak. Handled it. All puns intended. Physical touching. And involved the same exact exclusion, the same carrier, and the same lawyer. And you held that the auto exclusion applied to that case from the delivery of milk from a tank truck into a cheese factory. And the milk contaminated, unfortunately, all the cheese in the cheese factory. But there's other cases. The Duncan case involving the gas explosion. The, I'm sorry, Duncan involved leaking drum. Axton involved a gas explosion. None of these cases. It's also the ordinary meaning, isn't it? I mean, if a freight company, a railroad company, contracts to carry freight from one place to another, one would describe that as they're handling the transportation of the freight. Of course. Even if somebody not employed by the railroad puts it on and somebody else not employed by the railroad takes it off later on. They're handling the transportation. We use that word all the time. All of lawyers and judges referring to matters that they handle don't necessarily, they don't touch the matter. They may touch the briefs. But handle is a pretty generic term. I couldn't agree more. Why don't you just, we'll take 15 seconds to wrap up. We've kept you long over your time. Sure. Just the completed operations doctrine I know was a big issue below. We don't think that that is really necessary to get into here because our actual language says that loading and loading continues until final resting place. Just on the all-state policy, they have this hitch argument that they're hitching their wagons to.  Attached. Attached. I don't think that that can be the law. If you have a car, this SUV is driving down the road and the negligence stemmed from the failure to do something with the hitch. And the trailer comes off and injures or damages someone. That still arises out of the use of the auto even though the trailer, when it causes damage metaphysically, was not attached. So I don't think that that is a rational or reasonable reading of the all-state policy. Okay. Thank you. Why don't we hear from the appellee. Let's see what we have. And again, correct me if I'm getting your last name right. Is it Ms. Berberick? Yes. Okay. Good morning. May it please the court. My name is Karen Berberick on behalf of Appellee All-State Property and Casualty Insurance Company. I'd like to start today by acknowledging that it is absolutely true that there could not be coverage under both policies. Each policy, to determine coverage, you need to look at the specific language of the policy. These are two entirely different policies in that one is a personal auto policy and one is a commercial general liability policy. They are designed to cover different risks. They are for different purposes. And the language in both doesn't necessarily mean that if there's coverage under one, then there's not coverage under the other. So there could be no coverage at all. Exactly right, Your Honor. Exactly right. But New York law is quite resistant to a conclusion of non-coverage, right? Well, my adversary was talking about New York law section 388. The all-state policy tracks section 388. If a vehicle is attached or by tow, then there is coverage. And that's exactly what the all-state policy says. If a trailer is attached to an insured auto, it is an insured auto. That definition is very, very simple and it's very plain. So when they roll into the garage, the trailer is attached. That is correct. And then Mr. Kim detaches it. Correct. You can't detach something that isn't attached, right? I mean, by definition, it's attached when you detach it. That is correct. So if the injury occurs in the course of detaching, isn't the trailer still covered? The accident did not occur in the course of detaching. How do we know that? Because of the word then? Because of the testimony of Mr. Kim. But the testimony of Mr. Kim that you're relying on is he says, I unhitched and then the accident occurred. Isn't that the only language that suggests there is any separation at all between the detaching and the accident? That is the admissible evidence that we're relying on, yes. But the only other – first of all, this is a person who doesn't speak English that well, as you can tell from his deposition. And even someone who does speak the language perfectly well might well say, I detached it and then it slid off and hit the guy. Right? Then the accident occurred, even though the accident is the immediate result of detaching the trailer. And indeed, Mr. Kim also says at another point, although at this point it's very hard to pierce his English, that he was sort of sliding it off. That was the point of detaching it, is that I'm imagining, although I don't know that we have that fact in the record, that this trailer only has one axle, so that if it's got a heavy weight on it and you detach it, it will go like that. And then his effort was precisely to unload the detached trailer by detaching it and having it slide off. And alas, it slides off either right onto Mr. Ko, because he's standing there, or it falls the wrong way, not the way he expected, and lands on Mr. Ko, however that occurs. So why isn't that something that occurs in the course of unloading a trailer that is attached to the car at the time that this occurs? There are a few reasons. One is that the immediate moment the trailer is detached, it no longer is an insured auto. I just want to point to my adversary's hypothetical before, because he was pointing to a situation where a vehicle is traveling on the road and the attached trailer becomes disattached. Would there be coverage? That's an entirely different coverage analysis, because the vehicle that's insured is the car, and that's actually being operated. Why isn't the vehicle, the car, the thing that is being unloaded here? The car is attached to the trailer in such a way that he's using the car to transport this device, and now he's going to unload the car. And the way he's choosing to unload the car, apparently, is to detach the trailer so that the thing slides off. Why isn't that part of unloading something that he had loaded onto the car, in effect, at a time when the trailer was attached? We don't know exactly that that was the case. Exactly. We don't know. This seems to be rather a disputed issue of fact, isn't it, as to whether, how exactly this accident occurred? Well, I submit that there's not a question of fact as to whether or not it was an insured auto. The testimony reveals that there was no unloading that had begun. No one was – both the vehicle was stationary, the trailer was stationary, the trailer had become unhitched. At the time it became unhitched, it ceased to be an insured auto under the policy. It doesn't constitute unloading under a personal auto policy. The definition or the standard to apply under a personal auto policy is very different than the standard to apply under a CGL policy. And, again, that's one difference between the two policies and how you can find there's no coverage under both. Well, but isn't he, in effect, using the trailer to unload itself? No. He's not using the trailer to unload itself because as soon as the trailer was unhitched, it became unattached. But why is that different than Mr. Kalick's hypothetical where the car is on the road? Either way, the trailer becomes detached before any damage is done. So the trailer has stopped being insured by your analysis. No, because the trailer is not necessarily exactly what's causing the damage in the hypothetical. The vehicle that's insured under the all-state policy to which the trailer was attached is still being operated. In this case, the vehicle was not being operated. The engine had turned off. But there are lots of cases in which the vehicle is turned off and it's still being used, right? And unloaded, in particular. But the auto itself, the vehicle itself, the Nissan Xterra, was not being unloaded. It was the trailer, and we submit that it was not being unloaded. There's no evidence in the record that it was actually being unloaded. Mr. Koh came to the business premises. He said he was not there to assist unloading the trailer. He was there just as a friend. Yeah, Mr. Koh has nothing to do with the unloading. But Mr. Kim has everything to do with the unloading. It's his machine. He's going to use it. He brought it here for the purpose of using it for his business. In order to use it for his business, he's got to unload it off the trailer, right? What else is happening? Why is the trailer being detached? Well, at some point in time, presumably, he will unload the trailer. But there's no evidence that the unloading had begun at that point in time. Well, what about, I mean, there's no express exclusion of his affidavit. I know the district court says admissible evidence, right? But his affidavit says, I was unhitching the trailer from the vehicle, and as the trailer lifted from the tow ball attached to the vehicle, the press became unstable and struck the plane. You're saying, not that that doesn't provide that, but it shouldn't be considered? Well, I'm saying that that particular affidavit also was years after the accident. That's a weight question, not an admissibility question. Correct, correct, correct, correct, Your Honor. Yeah, but doesn't that mean that there's a factual dispute? I don't think there's a factual dispute at all. Why can you win in summary judgment if we're not exactly sure what happened, right? I mean, there's stuff that you could interpret, like there was the quote from Judge Lynch's reference that something like it was unhitched, unhitched the trailer, and then the accident occurred. One could interpret that as meaning half an hour later. Or it could mean that basically as a consequence of unhitching, the whole thing pitched and the press fell off. And if you read it that way, that it was all simultaneous, are you saying that you necessarily win too, that if the very act of unhitching is what caused it, then it can't possibly be covered? The press fell off onto Mr. Coe. Presumably it was not attached appropriately and negligent attaching of some kind of good. Well, I don't think we should be presuming anything, right? I mean, we don't know. I mean, we're just left with the facts and the records, right? Well, it toppled over. They say it toppled over. It accidentally fell on Mr. Coe. So Mr. Kim says to your investigator in a recording that your man recorded, yes, then I'm going to parking the truck, and then I'm going to try to inaudible my machine. That's why I'm going to unhook. There is a hitch, right? That's what he's doing. And then he says I'm going to take the trailer off the hitch to roll over the hitch, and then I'm going to sliding down. Isn't that not interpretable as exactly what I was describing? You unhitch the trailer, and then the machine slides down. Why is that not a plausible way of reading the thing he says in his deposition, which is I unhitched it, and then it fell off? He unhitched it, and then it fell off. Once it's unhitched, it's no longer attached to an insured auto. The act of unhitching, as you agreed with me, is something that you can only do when it is hitched, and it's the act of unhitching that causes the problem. Once it is unhitched, it is no longer attached. So the moment it becomes unattached, it is not an insured auto. Well, also, just for the sake of argument, I've hitched trailers before. Unhitching a trailer, taking the ball off the thing, doesn't mean it's not attached, right? What about the chain? I mean, there is also just a factual question that there's two things you usually do when you attach a trailer. You hook it to the ball, and then you also chain it for good measure. And there's no saying one way or the other. Nobody even talked about it. So I'm also really kind of curious why this whole notion is that when you take the ball off the thing, now it's not attached, if attached means physically connected. So I don't know why you're assuming that even the statement that there's the ball taken off, that now it's not attached, because I don't think anybody ever said it's unattached. The words were always unhitched. So I'm kind of curious why we've gotten to the point where now we're making other factual assumptions that there's no connection between this trailer. In the investigative report, in the police report, in the deposition testimony, and even in his affidavit, the testimony was very clear that the accident happened after it was unhitched. Correct. And that's why I'm asking, why are you equating unhitched with unattached? Those are two different things, right? If you know, I mean, I don't know. I think it's common knowledge how trailers are hitched. Maybe it's not. But again, there are two things you connect when you connect. Actually, there's usually three, because you also sometimes connect the wires, so that the brake lights work. So I guess I'm also wondering why when you unhitch something, which I understand to mean taking the thing off the ball, why are we now assuming that the whole thing is unattached? Because you can remove the ball, the wires and the chain remain attached, and the thing is still attached, but it would then become quite unstable. So I guess I'm also wondering, based on the record here, where everyone keeps saying unhitched, why are we assuming that that means unattached, which I think is the operative word for the policy? It seems like we're making a factual leap here that I don't see in the record. Well. Did somebody say unattached? Did those words appear in the record? Or did people say unhitched? Because again, there's two different things. I understand what you're saying. You don't have to accept that they're two different things. But I guess I'm just baffled as to why we're equating those two to begin with. I'm thinking about what's in the record. The description of the accident was consistent, and. . . Which is that he unhitched the trailer and it became unstable. Correct. That's what happens when you take the thing off the ball, you poke a pin. But it also was not. . . It would remain unstable if you leave the chain and the wires on. I'm not trying to introduce facts into the record. What I'm asking, though, is why we're assuming that you're equating unhitching with unattaching or whether that remains an open question. Well, I would submit that that's not a question. The district court found that the. . . Right, it was an error. That was not an insured auto. And I would say the district court was correct. I mean, that's the answer. Nobody argued, and maybe if that's the way it was litigated in the district court, we have to take. . . We just take it that way. Maybe it was a false equivalent, but, oh, well, that's how it was litigated, and that's where we are. Well, it's also, Your Honor, not just. . . In order to have coverage under the all-state policy, it's not just that it has to be an insured auto. It has to arise out of the ownership, maintenance, use, loading, or unloading. And here, the loading on a personal auto is not the complete operations. The loading on a personal auto is the immediate act of placing the goods on the trailer and taking the goods off the trailer. But what he says to your investigator is, I'm going to take it off the hitch to roll over the hitch, and then I'm going to slide him down. Why isn't that part of the unloading? What he said to the investigator was an unsworn statement, and as you noted, there was a language barrier also. Yeah, but that applies just as well to, I unhitched it, and then the accident occurred. Why is that not a perfectly acceptable English description that is equivalent to what he says to your investigator? He says, I unhitched it, and then the accident happened during his deposition testimony, which was through an interpreter. So that is the sworn testimony upon which we are relying. The unrecorded statement, the recorded statement, I'm sorry. But if that's somewhat ambiguous, why don't we have a trial? And by the way, if we do have issues of fact, where do they get tried? In other words, is there first going to be then, if we decide that there is some unsettled issue of fact about exactly how this occurred that might bear on the coverage dispute, do we have a trial now first in the federal court on these issues about exactly how the accident occurred? Or do we just say, well, since we can't figure out for sure what happened, then the duty to defend lies where it lay at the beginning, and they have to continue the defense. But then you try it in the state court, and once we get fact findings from a jury about what exactly happened, if we ever do, then the indemnity issue will be litigated. I mean, how is this normally done, in other words? Well, I would submit that that would be correct. I think that here the duty to defend is clearly on Harley's bill. There's nothing in the complaint that references an auto. There's no indication of a negligent use of an auto. There is nothing to trigger all states' duty to defend here. Could you answer the question I had asked the appellant earlier? What is the permissibility under New York law to look at extrinsic evidence? And is it different when it's basically helping or hurting the insured party? In other words, is there a world where Harley's bill can't look at extrinsic evidence to get out of the case, but that if extrinsic evidence comes to the notice of, say, all state, it could trigger your duty to defend? So I guess a couple questions. One is, can New York law ever allow the insurance companies to have to look at extrinsic evidence, courts to look at extrinsic evidence? And number two, if so, is there ever an asymmetry between when, say, your client would have a duty to defend and whether another insurance company might not be able to look at the extrinsic evidence to get out of a duty to defend? The duty to defend, when you look at extrinsic evidence, that is considered when it would favor the insured. If the carrier is aware of some extrinsic facts that are not in the complaint that would bring the claim within coverage, then it needs to provide coverage and provide a duty to defend. So just hypothetically here, let's take out the unhitching. If the story were Mr. Coe tripped against this trailer while the press were on there and he injured his ankle, I assume that all state would say, look, nobody said anything about the trailer and the complaint. But once those facts came to our knowledge, yes, now we know we have coverage obligations. Maybe I'm using a bad hypothetical. I don't know if I would agree with the hypothetical, but I agree with the press. Well, all right, let me switch it around. Mr. Coe is standing there and the trailer drives over his foot. Yes. I'm not trying to get you to agree to some other scenario, but assuming those facts were not in the complaint, you would say, well, once those facts came to all states' knowledge, that's extrinsic evidence that triggers your duty to defend. Correct. And so you would agree that if we were to think that this was all covered, that the facts that are in the record trigger all states' duty to defend, then it would be proper to look at the extrinsic evidence. Your argument is not, you can't look at the extrinsic evidence. Your argument is, sure, look at it, but it shows that there is no coverage obligation on the part of all states. Is that fair? Even, there still would be coverage under the Harleysville policy. We're not talking about you. Okay. Assume for a moment we think the exclusion under Harleysville is broader than your inclusion. So we conclude it's excluded under Harleysville, but it will require consideration of extrinsic evidence to determine and factual dispute resolution to determine whether you cover or not. Do we look to the extrinsic evidence at that point to say you should defend in the meantime? I would say generally you look to the extrinsic evidence if it's in favor of coverage for the insured. However, here I do not believe that the extrinsic evidence or any evidence would have coverage under the all-state policy. This was a business property. This was a business equipment. This was a heavy piece of machinery in connection with the dry cleaning business that fell on top of Mr. Coe on the business property. All the allegations involve premises liability. This, we believe, is covered under the Harleysville policy. I think we have your argument. Thank you very much. And let's see. Mr. Kalik, you have reserved one minute for rebuttal. We're going to try to keep it moving here. So see what you can do with your 60 seconds. Yes, Your Honor. Thank you. May it please the Court. Page 19 of our brief governs when a carrier may be relieved of its obligation to defend, and that's when the evidence conclusively established that an insurer faces no possible liability under its policy. That's our position, that we have no further duty to defend. Because it's conclusive. Correct. And if we find for any reason that it's inconclusive, then your duty of coverage continues, or duty to defend continues, even though at the end of the day, it may turn out that you are not obligated to indemnify, and perhaps that somebody else is really on the hook for the expenses if the ultimate resolution shows that your coverage does not apply. If we were both triggered, you'd have to compare priority of coverage between the two policies. But I think the hitching or non-hitching or attachment or non-attachment is not an issue. In my mind, it depends on whether we're involved with unloading here, because I don't see any other way in which the trailer is being used at that moment. But put that aside. I'm just trying to get the structure of this. Yes. We would have to conclude that conclusively, the evidence shows that you cannot possibly be involved here, that you are absolutely excluded in order to terminate your duty to defend. And ensure it's relieved of its duty to defend if it establishes as a matter of law that there's no possible legal or factual basis on which it might eventually be obligated to indemnify. Right. And if that is not so now, that could become so at the end of the day once all the factual issues are totally resolved. Absolutely. And we have a claim for reimbursement of our defense costs here that we think we'd be entitled to. Just ten seconds left. The facts of this case are remarkably consistent in our view as to how it applies to the Harrisville policy in terms of Mr. Kim's intent of lifting the back of the trailer to slide this machine off. So there's no other construction of the facts that could lead to any result. The jury could find any result other than that this was the unloading of the press. Thank you. Thank you very much to both of you. Very helpful oral arguments on both sides. We will reserve the decision. Thank you very much.